IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET M. DEGIOVANNI SHARP | : | |
| 2215 Prior Road, Apartment C | : | |
| Wilmington, DE   19809 | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| WHITMAN COUNCIL, INC. | : | |
| 2455 S. Third Street | : | |
| Philadelphia, PA   19148 | : | |
| | : | |
| ROBERT C. BLACKBURN | : | |
| 147 Roseberry Street | : | |
| Philadelphia, PA   19148 | : | |
| | : | |
| HENRY LEWANDOWSKI | : | JURY TRIAL DEMANDED |
| 335 Wolf Street | : | |
| Philadelphia, PA   19148 | : | |
| | : | |
| MICHAEL SULLIVAN | : | |
| 2205 S. Third Street | : | |
| Philadelphia, PA   19148 | : | |

## COMPLAINT

Plaintiff Janet DeGiovanni Sharp hereby files this civil rights action against Defendants Whitman Council, Inc., Robert C. Blackburn, Henry Lewandowski and Michael Sullivan and states as follows:

### Parties

1.  Plaintiff Janet DeGiovanni Sharp ("Mrs. Sharp") is currently 49 years of age, is the Executive Director of Whitman Council, Inc., and currently resides in Wilmington, Delaware.

2.  Defendant Whitman Council, Inc. ("Whitman") is a federally funded Neighborhood Advisory Council (NAC) that receives funds from Housing and Urban Development through the Office of Housing and Community Development of the City of

Philadelphia ("OHCD").  Whitman has a business address at 2455 S. Third Street, Philadelphia, PA   19148.  Whitman is required to follow federal and state employment and anti-discrimination laws.

       3.       Defendant Robert C. Blackburn is the President of Whitman who resides at 147 Roseberry Street , Philadelphia, PA   19148.  He is sued in his official and individual capacity.

       4.       Defendant Henry Lewandowski is a Board Member of Whitman Council and Vice President of Whitman who resides at 335 Wolf Street, Philadelphia, PA   19148.  He is sued in his official and individual capacity.

       5.       Defendant Michael Sullivan is a Board Member of Whitman Council and Chairman of Whitman Council's Personnel Committee in charge of investigating Mrs. Sharp who resides at 2205 S. Third Street, Philadelphia, PA   19148.  He is sued in his official and individual capacity.

**Jurisdiction and Venue**

       6.       The United States District Court for the Eastern District of Pennsylvania has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because it is between citizens of different states and the amount in controversy exceeds $100,000, exclusive of interest and costs.  The court also has jurisdiction pursuant to 28 U.S.C. § 1331 which provides for original jurisdiction of plaintiff's claims arising under the laws of the United States.

       7.       Plaintiff has exhausted her administrative remedies, having filed timely complaints with the Equal Employment Opportunity Commission and with the Pennsylvania

Human Relations Commission and has taken other steps necessary to bring this action before this Court.

8. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2) and (c) because defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## Factual Background

9. Mrs. Sharp has been employed full time by Whitman as Executive Director since the early 1990's.

10. She has received outstanding employment reviews for every year she has been employed until the 2004 review, submitted to her in August 2005.

11. The negative review came after Mrs. Sharp refused to sign a letter of release waiving any claims she might have against Whitman or its Board of Directors for discrimination, harassment or intimidation.

12. Whitman is a neighborhood group responsible for quality of life issues within a specific service area of South Philadelphia locally known as the Whitman Neighborhood.

13. The Board of Directors of Whitman Council is made up of four officers and nine "A" Board members. The Board supervises the Executive Director and is responsible for implementing resolutions voted upon and for ensuring compliance with the service contract issued through OHCD.

14. Until August 2004, a local Catholic pastor was a member of the Whitman Board of Directors. At or about that time, the Reverend made the difficult decision to leave the

active ministry of priesthood and because he moved from the area, he was no longer eligible to be a member of the Whitman Board.

15.  Mrs. Sharp, who was at that time Janet DeGiovanni and divorced from her husband, subsequently formed a deep friendship with the former pastor and they ultimately married in June 2005.

16.  In August 2004, defendant Robert Blackburn placed a call to the Director of Neighborhood Coordination for OHCD claiming that Ms. DeGiovanni was having an affair with a priest and that Whitman wanted grounds to terminate her.  In a letter written to OHCD, Mr. Blackburn requested OHCD examine its personnel policies.  OHCD responded by letter cautioning Mr. Blackburn to follow the law and Whitman policies.

17.  Mr. Blackburn proceeded to question community members, church authorities and otherwise spread rumor and innuendo.

18.  At the September 2004 Whitman Board meeting plaintiff received a $1000 merit raise.  Mr. Blackburn made public positive comments about plaintiff's job performance at that meeting.  Nevertheless, the 2004 evaluation, received in August 2005, contained a number of negative comments.

19.  In October 2004, Mr. Blackburn came to the Whitman office with Mr. Lewandowski, Whitman's vice president and an attorney with a local firm, purportedly to discuss plaintiff's 2004 employment evaluation.  Instead, Mr. Blackburn demanded plaintiff's "side of the story."  He also asked personal, inappropriate questions about plaintiff's private life.  Plaintiff declined to answer as the questions were neither job-related nor performance related.  Mr. Blackburn told plaintiff that declining to answer his questions violated Whitman

employment policies and gave plaintiff 24 hours to resign or he would "go public" with some unspecified information.

20. The next day plaintiff contacted Mr. Blackburn and declined to resign.

21. Mr. Blackburn then called an emergency meeting of the Whitman Board of Directors regarding plaintiff's employment status. The Board agreed to form a special investigation committee and authorized $2000 funding from Whitman monies to conduct the investigation. The Board later authorized an additional $5000. It is believed and therefore averred that these were monies in a special account given to Whitman specifically to be used for the betterment of the community, not for investigations.

22. In November 2004 defendant Michael Sullivan and another Board member came to the Whitman office and told plaintiff that he was the chairman of a newly formed personnel committee charged with investigating plaintiff. Mr. Sullivan produced a list of questions and wanted immediate answers. Plaintiff asked for time to read the questions and obtained a copy.

23. The questions were generally of a personal nature. The document said that failure to answer any of the questions would be considered insubordination and grounds for termination.

24. The document also indicated that Mr. Sullivan and the Board of Directors knew that Whitman Council was subject to federal and state anti-discrimination and employment laws, nevertheless answers to the questions were demanded of plaintiff under penalty of termination.

25. Plaintiff complained to OHCD and submitted a copy of the questions.

26. Plaintiff subsequently received a personal letter from Mr. Lewandowski on his law firm's letterhead, which plaintiff felt was an attempt to intimidate her.

27. One Board member expressed concern to OHCD about the actions of Mr. Blackburn and Mr. Sullivan and stated that he believed the questions and investigation of plaintiff were not appropriate.

28. Mr. Blackburn then attempted to defend his actions with explanations to the Whitman Board and OHCD.

29. One Whitman Board member asked Mr. Blackburn if the questions were legal and if they were not the Board should be so informed. That Board member told Mr. Blackburn he assumed that Mr. Blackburn would be liable for his actions and the actions the Board took based on Mr. Blackburn's representations.

30. In December 2004 Mr. Blackburn took it upon himself to investigate plaintiff's formal grievance to OHCD about Mr. Blackburn. Mr. Blackburn found the grievance groundless.

31. Mr. Blackburn then directed plaintiff to appear before the Whitman Board to explain her relationship with another community development group, a relationship formally recognized by resolution of the Whitman Council. Plaintiff received information that this latest demand was meant as "payback" to the Whitman Board member raising questions about the investigation of plaintiff. That Board member's father is executive director of the community development group.

32. Mr. Blackburn continued to demand that plaintiff meet personally with him to complete her 2004 evaluation. Plaintiff requested that his comments be put in writing and

she would respond in writing.  Mr. Blackburn also continued to demand that plaintiff "face the entire Board" to answer questions.

33. Plaintiff injured her back lifting heavy food baskets during community food distribution through Whitman prior to Christmas 2004.  That injury combined with the mental stress put upon her by defendants caused plaintiff to be out of the office for several months.

34. Plaintiff filed complaints with EEOC and PHRC and ultimately received right to sue letters.

35. Plaintiff was denied Worker's Compensation and had to return to work in order to survive economically as all of her leave time was used up.

36. Plaintiff returned to work in June 2005 and found that a younger woman had been hired to replace her.  That woman was eventually terminated.

37. The first day back in the Whitman Council Office plaintiff found on her desk the same list of questions originally presented in late 2004 and again with a demand for answers or she would be terminated.

38. Plaintiff answered each question, responding to the inappropriate questions noting that it violated her rights to a workplace free of harassment, intimidation and discrimination and noting that she had been harassed, intimidated and discriminated against by Mr. Blackburn, Mr. Sullivan, Mr. Lewandowski and two others and requested an investigation.

39. Mr. Sullivan responded to her request in or about August 2005 by claiming her answers to the questions were vague and requested she sign a waiver/release of Whitman and its Board.  A subsequent letter demanded she sign the waiver/release or she would be deemed insubordinate, a written warning put into her file and face possible termination.

40. As a result of the willful and unlawful actions of defendants, plaintiff has been caused to suffer a severe loss of professional status and reputation in the community of his peers. Plaintiff has been subjected to rumor and innuendo and held up to public ridicule.

41. As a result of the willful and unlawful actions of defendants, plaintiff has been caused to suffer serious losses of pay, benefits and other employee remunerations, an undeserved and painful diminution of her ability to provide herself and her family with the earned rewards of excellence in her career of loyalty and effort on behalf of defendant, emotional distress and humiliation and a loss of life's pleasures.

## COUNT I

42. Plaintiff repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. in that they discriminated against plaintiff on account of her religion and her sex and engaged in retaliation.

## COUNT II

44. Plaintiff repeats and realleges paragraphs 1 through 43 as though fully set forth herein.

45. Defendants violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. in that they discriminated against plaintiff on account of her age.

## COUNT III

46. Plaintiff repeats and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Defendants violated the provisions of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. in that they discriminated against plaintiff on account of her religion, her sex and her age and engaged in retaliation.

**COUNT IV**

48. Plaintiff repeats and realleges paragraphs 1 through 47 as though fully set forth herein.

49. Defendants violated the provisions of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421 et seq. in that defendants retaliated against plaintiff when she reported wrongdoing to the appropriate authorities.

**COUNT V**

50. Plaintiff repeats and realleges paragraphs 1 through 49 as though fully set forth herein.

51. There was a contract between plaintiff and Whitman Council Inc.

52. The contract contained promises that Whitman would not discriminate in any way against plaintiff including observing all federal and state anti-discrimination laws.

53. Plaintiff was a direct and/or third party beneficiary to the contract.

54. Plaintiff reasonably relied to her detriment on these promises and performed under the contract.

55. Defendants breached these specific promises.

56. Defendants had a duty to fulfill the obligations of the contract.

57. Defendants' breaches of these promises proximately caused damages to plaintiff which were in the contemplation of the parties when the promises were made, in an amount to be determined at trial in excess of $150,000.

58. Defendant Whitman Council is subject to liability for damages caused to plaintiff by the wrongful acts of Mr. Blackburn, Mr. Lewandowski and Mr. Sullivan who were acting in the ordinary course of Whitman Council's business or with actual authority of Whitman.

59. Alternatively Mr. Blackburn, Mr. Lewandowski and Mr. Sullivan were acting as individuals and Whitman Council had a duty to protect plaintiff from their wrongful acts.

## COUNT VI

60. Plaintiff repeats and realleges paragraphs 1 through 59 as though fully set forth herein.

61. Defendants Mr. Blackburn, Mr. Lewandowski and Mr. Sullivan negligently and/or intentionally interfered with plaintiff's existing contractual relationship with Whitman Council.

62. Defendants Mr. Blackburn, Mr. Lewandowski and Mr. Sullivan acted without justification for the purpose of inducing or causing Whitman not to continue its contract with plaintiff. Their actions include, but are not limited to, the actions set forth in this complaint.

63. Defendants Mr. Blackburn, Mr. Lewandowski and Mr. Sullivan, without regard to the ramifications of their actions, placed plaintiff in a position adverse to Whitman and the Whitman community.

64. Defendants Mr. Blackburn, Mr. Lewandowski and Mr. Sullivan, negligently and/or intentionally embarked on a path leading to the destruction of the contractual relationship between Whitman Council Inc. and the plaintiff.

65. Plaintiff has suffered damages as a result of these defendants' actions.

## COUNT VII

66. Plaintiff repeats and realleges paragraphs 1 through 65 as though fully set forth herein.

67. At or about the time of the events set forth in this complaint, defendants concealed or otherwise misrepresented certain material facts, including facts involving the true

reason for actions defendants were taking in regard to plaintiff's employment and monies spent on investigating plaintiff.

68. Defendants intended that by these representations plaintiff would be induced to act.

69. Defendants knew or should have known of the falsity of the representations and that plaintiff and others would rely on the representations.

70. Defendants had a duty to disclose the misrepresentations and failed to exercise reasonable care.

71. As a direct result of defendants' negligent and/or intentional misrepresentations plaintiff has been damaged.

72. The intentional misrepresentations were outrageous, willful, wanton and malicious to the detriment of the plaintiff and for the sole benefit of defendants.

**COUNT VIII**

73. Plaintiff repeats and realleges paragraphs 1 through 72 as though fully set forth herein.

74. Beginning at least as early as 2004, the defendants reached a common agreement and engaged in a conspiracy to commit unlawful or tortious acts, or to use unlawful or tortious means to commit acts not themselves illegal, and did commit those acts or use those means as described herein, in furtherance of the common agreement and conspiracy.

75. These acts were a conscious, intentional and concerted effort to gain from misleading OHCD and the Whitman community despite defendants' knowledge that such would cause economic harm.

76. Defendants conspired and agreed to conduct, and to participate in the conduct of, the activity described herein.

77. Defendants committed the unlawful or tortuous acts as described in concert with each other, and with express or tacit understanding to participate, pursuant to a common design or plan, and/or aided and abetted or gave substantial assistance or encouragement to each other in this conduct knowing that the conduct of each was in furtherance of their common design or plan.

78. The actions or omissions described herein have been in furtherance of defendants' conspiracy, common design or plan.

79. The injuries suffered by plaintiff were the foreseeable and intended result of the defendants' conspiracy.

80. As a result of each defendant's knowing and purposeful participation in the conspiracy, each defendant is legally responsible for all of the acts of the other defendants in furtherance. These acts are ongoing and threaten to continue in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to award plaintiff damages against defendants, jointly and severally, for past and future loss of income, growth opportunities and all benefits denied her due to the improper and unlawful actions of defendants; award damages in compensation for her emotional distress, humiliation, loss of reputation and status in the community of her peers and the loss of her ability to provide herself and her family with the rewards of her years of excellence in her chosen profession; grant punitive damages in an amount sufficient to punish defendants and deter others from similar wrongdoing; grant liquidated damages as allowed pursuant to the Age Discrimination in Employment Act; prejudgment interest; grant to plaintiff costs, expert fees and reasonable attorneys fees and other such additional relief as the Court deems just and proper under the circumstances all in an amount well in excess of $150,000.

Respectfully submitted,

_____
Lynanne B. Wescott
PA ID #52928
The Wescott Law Firm P.C.
239 S. Camac Street
Philadelphia, PA   19107
215-545-0324

Dated:  August 11, 2005