```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JANET M. DEGIOVANNI SHARP      : CIVIL ACTION
                               :
          vs.                  :
                               : NO. 05-CV-4297
WHITMAN COUNCIL, INC.,         :
ROBERT C. BLACKBURN,           :
HENRY LEWANDOWSKI and          :
MICHAEL SULLIVAN               :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                     **October 1, 2007**

This civil action is once again before the Court for disposition of the motions of defendants Whitman Council, Inc. (Docket No. 48) and Robert C. Blackburn, Henry Lewandowski and Michael Sullivan (Docket No. 49) for summary judgment as to the remaining counts of the plaintiff's complaint. For the reasons which follow, the motions shall be granted in part and denied in part.

**Factual History**

As we discussed in our previous Memorandum and Order of August 3, 2006, this case arises out of the plaintiff, Janet DeGiovanni Sharp's employment with the Whitman Council, where she has been employed as the Executive Director since September, 1991. Whitman Council, Inc. ("Whitman") is a Pennsylvania Non-Profit Corporation which is funded as a Neighborhood Advisory Committee organization ("NAC") by the City of Philadelphia's

Office of Housing and Community Development ("OHCD") and which provides services to the Whitman section of South Philadelphia. Whitman is governed by a Board of Directors composed of up to thirteen elected Class "A" members and up to three Class "B" Directors who are chosen by the Class "A" members.  Four of the thirteen Class "A" Board members serve as the President, Vice-President, Secretary and Treasurer of the Board.  The Board of Directors supervises the Executive Director.  Each year, Whitman enters into a contract, known as an NAC Provider Agreement with OHCD, pursuant to which Whitman agrees to provide housing and community development services and activities for Whitman area residents and OHCD agrees to provide the funding necessary to allow Whitman to provide those services.

Prior to August 2004, one of the Whitman "A" Board Members was a local Catholic pastor.  At that time, the pastor "made the difficult decision to leave the active ministry of priesthood and because he moved from the area, he was no longer eligible to be a member of the Whitman Board."  (First Am. Compl., ¶17). Plaintiff "formed a deep friendship with the former pastor and they ultimately married in June, 2005."  (First Am. Compl., ¶18). Plaintiff's relationship with the former priest apparently generated some controversy in the Whitman community as it was shortly after he left the church that the defendants began the pattern of activities which prompted Plaintiff's complaint in

2

this case including: (1) questioning the plaintiff about her personal relationship with the former priest, ostensibly so as to discern whether or not the plaintiff had been the victim of sexual harassment or had violated Whitman's personnel policies; (2) contacting the Director of Neighborhood Coordination for OHCD about Plaintiff's relationship in an effort to find grounds to terminate her; (3) questioning community members and church authorities about the matter; (4) forming a special investigating committee and appropriating $2,000 of Whitman's funding to conduct an investigation; (5) threatening Plaintiff with termination for insubordination if she refused to answer questions regarding her relationship.

Shortly after Plaintiff and her new husband were married, a church reunion gathering was held in Wildwood, NJ at which some of the attendees purportedly wore badges and T-shirts mocking the Sharps.  Despite the defendants' threats, however, Ms. DeGiovanni Sharp continues in her employment as the Whitman Council Executive Director to this day.  On August 11, 2005, after exhausting her administrative remedies with the EEOC and the PHRC, Plaintiff instituted this lawsuit for having been "subjected to rumor and innuendo," "held up to public ridicule," suffering a loss of "professional status and reputation" as well as of "pay, benefits and other employee remunerations," and "emotional distress, humiliation and loss of life's pleasures."

(First Am. Compl., ¶s44-46). Ms. DeGiovanni Sharp sought relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, 42 U.S.C. §1981a, the Pennsylvania Human Relations Act, 43 P.S. §951 *et. seq.* ("PHRA"), the Pennsylvania Whistleblower Law, 43 P.S. §1421 *et. seq.,* and under the common law theories of publication of private information, false light invasion of privacy, breach of contract, negligent and/or intentional interference with existing contractual relationship, negligent and/or intentional misrepresentation and conspiracy.

Defendants filed motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) and by order dated December 22, 2005, we partially converted the motions to Rule 56 motions and gave the parties until February 6, 2006 to take discovery on the issue of whether the individually named defendants were Plaintiff's supervisors and whether the Office of Housing and Community Development was Plaintiff's *de facto* employer. On August 3, 2006, we granted the motions in part and denied them in part finding, *inter alia*: (1) that the Office of Housing and Community Development and the Whitman Council were not so operationally entangled as to make OHCD the plaintiff's employer and to give rise to causes of action under the PHRA, Title VII or Section 1981A; and (2) that plaintiff had not alleged sufficient facts to support her causes of action under the Pennsylvania Whistleblower Law, or under the common law theories of false light invasion of

4

privacy, negligent interference with contractual relations, and negligent and/or intentional misrepresentation.[1]  By the instant motions, Defendants again seek the entry of judgment in their favor as a matter of law on all of the remaining claims against them.

## **Summary Judgment Standards**

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 50 L. Ed. 2d 748, 97 S. Ct. 732 (1977). Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56©.  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party

---

[1] In addition to invoking this Court's original jurisdiction under 28 U.S.C. §1331, Plaintiff also maintains this action pursuant to 28 U.S.C. §1332 providing for diversity jurisdiction since at the time suit was commenced, she was a resident of Delaware.

may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See, Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## Discussion

Plaintiff has remaining her state law claims for breach of contract, invasion of privacy for the improper publication of private facts, intentional interference with existing contractual relations and civil conspiracy.  We address each of these *seriatim.*

### A.  *Breach of Contract*

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'"  Chemtech International Inc. v. Chemical Injection Technologies, Inc., No. 06-3345, 2007 U.S. App. LEXIS 21697 at *4-*5 (3d Cir. Sept. 10, 2007), quoting Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 1999 PA Super 14, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  For a contract to be enforceable, the nature and extent of the mutual

obligations must be certain and the parties must have agreed on the material and necessary details of their bargain. Lackner v. Glosser, 892 A.2d 21 (Pa. Super. 2006), citing Peck v. Delaware County Board of Prison Inspectors, 572 Pa. 249, 260, 814 A.2d 185, 191 (2002).  "Where, however, there is no agreement or even a discussion as to *any* of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to *reasonably* believe that it could be enforceable in an action at law."  Id., citing Lombardo v. Gasparini Excavating Co., 385 Pa. 388, 393, 123 A.2d 663, 666 (1956).

Generally speaking, an employment manual or other workplace rules will be deemed a binding contract only where the benefit sought to be enforced was extended at the time of hire and where there is evidence by which a reasonable person would conclude that the employer intended to be bound by its terms. Garcia v. Matthews, No. 02-3318, 66 Fed. Appx. 339, 342, 2003 U.S. App. LEXIS 7967 at *7 (3d Cir. April 25, 2003).  See Also, Luteran v. Loral Fairchild Corp., 455 Pa. Super. 364, 372, 688 A.2d 211, 215 (1997)("It is well settled that 'to find that...a handbook has legally binding contractual significance, the handbook or oral representation must in some way clearly state that it is to have such effect,'" quoting Martin v. Capital Cities Media, Inc., 354 Pa. Super. 199, 511 A.2d 830, 842 (1986)).

In this case, the plaintiff testified at her deposition that she has an employment contract by virtue of her job description, employee handbook and the services contract between the City of Philadelphia (through its Office of Housing and Community Development) and Whitman Council.[2]  Plaintiff further testified that she did not receive any of those documents until *after* she was hired and/or began working for the Whitman Council, although certainly the parties discussed what her general job responsibilities would be prior to her hire.  (Sharp Dep. 3/9/07, 89-92).  It thus does not appear that whatever benefits which may inure to Plaintiff by virtue of these written materials were extended at the time of Plaintiff's hire or in consideration for her acceptance of the directorship position.

Regardless, after carefully reviewing all three documents, we cannot find that they give rise to a valid contract between

---

[2]  In her brief in opposition to these summary judgment motions, however, Plaintiff contends that her deposition testimony was erroneous and that the terms and conditions of her employment are governed exclusively by the annual contract between OHCD and Whitman, which renews each year thus giving her "a continuing contract of definite duration". (Pl's Consolidated Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, p. 3).  Then despite this assertion, Plaintiff's brief then goes on to "cherrypick" various phrases from all three documents which, she claims support her assertion that she and the Whitman Council entered into an employment contract. ("The salaries specified in the Budget are the maximum salaries which can be paid for the corresponding position, regardless of any conflicting provisions of the NAC's personnel policies.  The NAC shall notify the City of changes in any position title or job description." 1991 Contract for Professional Services between City of Philadelphia and Whitman Council, §§II and IV(B)); ("At termination of employment, a permanent employee shall be paid for accumulated vacation in an amount not to exceed 15 days time..." Personnel Policies, Exhibit E-4(G)(1)).  However, even reading *all* of these quoted passages together, we find no specific mention of either the plaintiff herself or her position and no discussion of mutual promises between Plaintiff and the Whitman Council such as would constitute valid consideration to support a binding contract.

the parties to this litigation. Indeed, there is no evidence that the plaintiff was ever asked to sign or acknowledge receipt of an employment contract nor is there any evidence to suggest that OHCD's contract with Whitman Council and its accompanying outline of personnel policies, or plaintiff's job description were ever meant to bind Whitman, the plaintiff or the individual members of Whitman's Board of Directors to an employer-employee relationship.

Plaintiff further submits that the defendants breached her employment contract by, *inter alia,* "interfering with her legitimate Worker's Compensation Claim," (for injuries suffered while lifting heavy food baskets for the poor)[3] and by the individual defendants "coming into the Whitman office ... demanding 'her side of the story' and asking ... personal and offensive questions about her private life..." (Pl's Consolidated Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, at p. 9). While plaintiff relies upon select clauses to make out her contract claim, we can neither find nor infer the essential terms of a contract from that recited language. As there is also no evidence of any discussion as to *any* of the essential terms of an alleged bargain, we conclude that the 'agreement' is too indefinite for

---

[3] Interference with her worker's compensation claim also appears to be the basis for Plaintiff's claim for legal damages. As we find that the first two elements for a successful breach of contract claim have not been satisfied here, we do not reach the issue of resultant damages.

either party to *reasonably* believe that it could be enforceable in an action at law.  Plaintiff also fails to advise the Court as to which terms of her alleged contract were breached by the defendants' actions and we are likewise at a loss to discern what those terms could possibly be.  For these reasons, summary judgment shall be entered in favor of the defendants on Count VI of the First Amended Complaint.

    B.   *Intentional Interference with Contractual Relations*

In our Memorandum Opinion of August 3, 2006, we found that Plaintiff had sufficiently pled a cause of action for intentional interference with existing contractual relations against the individual defendants Blackburn, Lewandowski and Sullivan in Count VII of her First Amended Complaint.  By their instant summary judgment motion, the individual defendants now argue that this claim also fails as a matter of law because Plaintiff failed to set forth sufficient evidence to prove such a cause of action against them.  We agree.

The law of Pennsylvania recognizes a cause of action for tortious interference with contractual relations as having the following elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

CGB Occupational Therapy v. RHA Health Services, Inc., 357 F.3d 375, 384 (3d Cir. 2004), citing Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) and Pawlowski v. Smoro, 403 Pa. Super. 71, 588 A.2d 36, 39-40 (1991).  "Thus a tortious interference claim does not accrue until, at least, the plaintiff suffers injury (i.e., "actual legal damage") as a result of the defendant's conduct."  Id.

Here, we conclude that the plaintiff has sufficiently demonstrated the first three elements of the tort in that there is clear evidence that she had an existing employment relationship with Whitman Council with which the three defendants unjustifiably attempted to interfere by undertaking an investigation into the plaintiff's private life and threatening her with termination if she did not comply.  However, despite the defendants' efforts, Ms. DeGiovanni-Sharp remains employed by the Whitman Council to this day.  There is thus no evidence that she has suffered the actual legal damages requisite to maintaining a cause of action for tortious interference.  Summary judgment shall therefore also be granted in favor of the defendants on Count VII of the First Amended Complaint.

    C.    *Invasion of Privacy by Publication of Private Facts*

It is axiomatic that one who gives publicity to a matter which concerns the private life of another is subject to liability to the other for invasion of privacy if the matter

published is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.  Culver v. Port Allegany Reporter Argus, 409 Pa. Super. 401, 404, 598 A.2d 54, 56 (1991), citing Harris By Harris v. Easton Publishing Co., 335 Pa. Super. 141, 154, 483 A.2d 1377, 1384 (1984) and Restatement (Second) of Torts, §652D.  Stated otherwise, in order to make out a claim of publicity to private life, a plaintiff must establish that (1) a private fact was (2) publicized and (3) that such fact was of a type highly offensive to a reasonable person and (4) not of legitimate concern to the public.  Santillo v. Reedel, 430 Pa. Super. 290, 295, 634 A.2d 264, 266 (1993).

   A private fact is one that has not already been made public. Jenkins v. Bolla, 411 Pa. Super. 119, 124, 600 A.2d 1293, 1296 (1992).  Publicity requires that the matter is made public, by communicating it to the public at large or to so many persons that it must be regarded as "substantially certain to become one of public knowledge."  Gross v. Taylor, Civ. A. No. 96-6914, 1997 U.S. Dist. LEXIS 11657 at *28 (E.D.Pa. August 5, 1997), quoting Harris, 483 A.2d at 1384.

   In application of the preceding principles to the matter at hand, we find that sufficient evidence exists on this record that the defendants did, indeed, communicate and discuss with various members of the Whitman/Our Lady of Mt. Carmel communities the

12

fact that the plaintiff was engaged in a personal relationship with and eventually married, the former Father Sharp.  It further appears that the defendants also made public that they were of the opinion that the Sharps' relationship was violative of, among other things, Whitman Council's personnel policies, that money was missing from both the Mt. Carmel church and the Whitman Council, and that they were formally investigating Ms. DeGiovanni-Sharp and this relationship.  (See, e.g., Exhibits 1, 2, 4, 5, 14, 16, 21 to Plaintiff's Consolidated Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment).  As we previously noted in our August 3, 2006 Memorandum Opinion, "we find that the issue of whether the plaintiff did nor did not have an intimate relationship with a former board member who happened to be a Catholic priest is a truly private matter in which we can discern no legitimate public interest."  The motions for summary judgment are therefore denied with respect to the remaining portion of Count V.

    D.  *Civil Conspiracy*

    Defendants also move for the entry of summary judgment on Count IX of Plaintiff's complaint which pleads a cause of action for the state law tort of conspiracy.  In support of their motions, Defendants submit that (1) a conspiracy cannot arise as a matter of law between a corporation and its employees, officers and directors acting in their official capacity and (2) there is

no evidence of any unlawful act on the part of the defendants.

To make out a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must establish (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage. Skipworth by Williams v. Lead Industries Association, Inc., 547 Pa. 224, 235, 690 A.2d 169, 174 (1997); Kline v. Security Guards, Inc., 386 F.3d 246, 262 (3d Cir. 2004); McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. 1998).  Proof of malice, *i.e.*, an intent to injure, is essential in proof of a conspiracy. Skipworth, supra., citing Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211, 412 A.2d 466, 472 (1979).  As a general rule, "a single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." Lackner v. Glosser, 892 A.2d at 35, quoting Grose v. Procter & Gamble Paper Products, 866 A.2d 437, 441 (Pa. Super. 2005).  See Also, Lee v. SEPTA, 418 F.Supp.2d 675, 681 (E.D. Pa. 2005)("An employer and its officers and employees acting in the scope of their duties constitute one legal person for purposes of conspiracy law and therefore cannot conspire together.").  One exception is where the officer or employee is acting on his own behalf or for personal reasons and not on behalf of the entity at the time of

the conspiracy.   See, Tyler v. O'Neill, 994 F.Supp. 603, 613 (E.D.Pa. 1998), *aff'd*, 189 F.3d 465 (3d Cir. 1999) citing, *inter alia*, Johnston v. Baker, 445 F.2d 424, 426-427 (3rd Cir. 1971); Doe v. Kohn, Nast & Graf, 862 F.Supp. 1310, 1328 (E.D. Pa. 1994). See Also, Mill Run Associates v. Locke Property Company, Inc., 282 F.Supp.2d 278, 294 (E.D. Pa. 2003).

Here, the plaintiff alleges that in addition to the evidence of an "intra-corporate conspiracy," there is also evidence that the three individual board members conspired with members of the International Brotherhood of Electrical Workers ("IBEW") Local 98 to investigate and discriminate against her and to interfere with her receiving worker's compensation coverage for her injuries and her work with the WECCACOE housing organization thereby causing her economic harm.  Plaintiff has produced copies of several e-mails, letters and Whitman resolutions which arguably could support these claims.  (See Exhibits 1,2, 4, 5, 6,,9, 10, 11, 12, 14, 18).  We therefore conclude that this issue is best left to a jury for determination.

Turning to Defendants' argument that there is no evidence of the commission of any unlawful act, we note that to be actionable, civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.  See, McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005); Boyanowski v. Capital Area

Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000) citing Nix v. Temple University, 408 Pa. Super. 369, 596 A.2d 1132, 1137 (1991) and Pelagatti v. Cohen, 370 Pa. Super. 422, 536 A.2d 1337, 1342 (1987); In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 789 (3d Cir. 1999).  As we observed in our August 3, 2006 Memorandum Opinion the averments in Count IX "are extremely vague," but viewing them and the record evidence now before us in the light most favorable to Plaintiff, we find it conceivable that a jury could find that the defendants conspired to invade Plaintiff's privacy by making public certain information about her private relationship with the former Father Sharp.  So saying, the defendants' motion for judgment in their favor on Count IX is denied.[4]

For all of the foregoing reasons, the defendants' motions for summary judgment are denied pursuant to the attached order.

---

[4] We note that in our August 3, 2006 memorandum we theorized that Plaintiff may have been trying to allege that the defendants conspired to unlawfully discriminate against her.  Given the Third Circuit's prediction that the Pennsylvania Supreme Court would require the dismissal of a civil conspiracy claim where the underlying tort was not shown, we recognize that our previous hypothesis may have been erroneous.  Boyanski, 215 F.3d at 405-406.  Regardless, as we find that Plaintiff has made a sufficient evidentiary showing to permit her claim for invasion of privacy to continue and as Count IX has been broadly pled, we shall permit Plaintiff to proceed under the theory that the defendants conspired to invade her privacy by publication of private facts.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JANET M. DEGIOVANNI SHARP       : CIVIL ACTION
                                :
         vs.                    :
                                : NO. 05-CV-4297
WHITMAN COUNCIL, INC.,          :
ROBERT C. BLACKBURN,            :
HENRY LEWANDOWSKI and           :
MICHAEL SULLIVAN                :
```

## ORDER

AND NOW, this    1st    day of October, 2007, upon consideration of the Defendants' Motions for Summary Judgment (Docket Nos. 48 and 49) and Plaintiff's Response thereto, it is hereby ORDERED that the Motions are GRANTED IN PART and DENIED IN PART and summary judgment is hereby entered in favor of all of the defendants as a matter of law on Counts VI and VII of the Plaintiff's First Amended Complaint.

In all other respects, the motions are DENIED.

                                    BY THE COURT:


                                    s/J. Curtis Joyner
                                    J. CURTIS JOYNER,          J.